## Case No. 3,129.

### CONSOLIDATED FRUIT-JAR CO. v. DORFLINGER.

[2 Am. Law T. Rep. (N. S.) 511; Cox, Manual Trade-Mark Cas. 250; 2 Wkly. Notes Cas. 99; 2 Cent. Law J. 721; 1 Law & Eq. Rep. 393; 21 Int. Rev. Rec. 348; 1 N. Y. Wkly. Dig. 427; 32 Leg. Int. 362.]

Circuit Court, E. D. Pennsylvania. Oct., 1874.

TRADE-MARK—REPRESENTING ARTICLE TO BE PROTECTED BY PATENT WHEN PATENT HAS BEEN DECLARED VOID.

1. Complainants used, to distinguish jars, the designation "Mason's Patent, Nov. 30th, 1858,"

"Mason's Improved," "The Mason Jar of 1858." It appeared that the jars had been protected by a patent that had been adjudged to be invalid. *Held*, that the designation had a tendency to mislead the public, and could not, therefore, be protected as trade-marks.

[Followed in Fairbanks v. Jacobus, Case No. 4,608.]

[See Allegheny Fertilizer Co. v. Woodside, Case No. 206.]

2. In respect of the designation "The Mason Jar of 1872," the objection *held* not to be applicable.

CADWALADER, District Judge. The complainants deduce their asserted right under Mason, who was the patentee of certain alleged improvements in fruit jars. There has been a judicial decision against the validity of his patent; and they do not now assert its validity. But they claim a trade-mark in what I think is not sufficiently distinguishable from a claim of exclusive right in the patented privilege. In other words, the alleged trade-mark is either deceptively obscure, or purports to be for the subject of the patent, or to include it. These remarks apply, whether the trade-mark is claimed in the words "Mason's Patent, November 30th, 1858," or in the words "Mason's Improved," or in the words "The Mason Jar of 1858," or in any substantially similar form of words. If there had not been a patent, a different import might perhaps be attributable to the second and third of the forms of words which have been quoted. But when the question is considered with reference to the pre-existence of a patent to Mason, these expressions are to be understood as applying to it, or as including the subject of it. The patentee of an alleged invention, in consideration of the exclusive privilege granted to him for a limited period, is bound to disclose fully his secret; and is understood as dedicating the supposed invention to the public, subject to the supposed exclusive privilege. If the privilege is invalid, the dedication is immediate and absolute. It has, therefore, been contended that the rights of the public ought to be protected against any subsequent assertion by the patentee of an independent right under the name of a trade-mark.

The objection to the complainants' alleged right would prevail if it covered the whole of the question. But it does not. The answer to the objection is, that a tradesman who has an invalid patent may nevertheless rightfully use the subject of the patent himself, and then he ought, in that case, to be protected against injury by others who falsely impose their goods on the public as his own. Upon this view of the subject the case of Sykes v. Sykes, 3 Barn. & C. 541, 5 Dowl. & R. 292, was decided in the year 1824. It is a decision apparently in favor of the complainants here. It was hastily considered on a motion for a new trial, a rule to show cause being refused. But there was no defect in the reasoning on the point upon which, alone, it was decided. Another objection, however,

to the complainants' bill, does not admit, in reason, of the same answer. This objection is, that no title can be successfully asserted in a trade-mark which is of a tendency to mislead or deceive the public. This objection may avail a defendant, notwithstanding what would otherwise be imputable to him as misconduct. The doctrine is, that the complainant must come into a court of equity with clean hands. 4 De Gex, J. & S. 149. This doctrine, if applicable alike at law, was overlooked in the case of Sykes v. Sykes. The direct application of the objection appears when we consider that the alleged trade-mark in question tends rationally to induce a belief that the subject of it is a securely patented invention of Mason, whereas it has been judicially decided that he never had a valid patent for it as an invention. In cases prior to 1863, before English vice chancellors, the authority of Sykes v. Sykes, supra, could not be disregarded; and there was great hesitation in holding directly that a trade-mark representing an article as patented, when in fact it was not securely protected by a patent, was invalid in equity. Thus Vice Chancellor Wood, afterwards Lord Hatherley, in 1853, intimated an opinion that the trade-mark would be invalid where no patent had ever existed (Flavel v. Harrison, 10 Hare, 467); but afterwards, in the same year, when considering the case of a patent which had expired, suggested some qualification of the general doctrine (Edelsten v. Vick, 11 Hare, 86, 87; compare with Morgan v. McAdam, 36 Law J. Ch. 229, 231). But such doubt, or hesitations, were removed in England by the case of Leather Cloth Co. v. American Leather Cloth Co. (in the house of lords in 1865) 11 H. L. Cas. 523, affirming a decree made by Lord Chancellor Westbury, in 1863. 4 De Gex, J. & S. 137. In this case Lord Kingsdown said: "If a trade-mark represents an article as protected by a patent, when in fact it is not so protected, it seems to me that such a statement prima facie amounts to a misrepresentation of an important fact, which would disentitle the owner of the trade-mark to relief in a court of equity against any one who pirated it;" and added, that he would have great difficulty in assenting to the distinction suggested by Vice Chancellor Wood, in case which had been cited. 11 H. L. Cas. 543, 544. Lord Kingsdown here succinctly restated the opinion of Lord Westbury, in the court of chancery; and Lord Westbury adhered to it in the court of appeal. Page 548.

An exception from this rule of decision had been previously, and has been since, recognized in the case of an article, such as patent leather, or patent thread, whose designation of this kind is in constant use, though no one supposes that it is thereby intended to convey the impression that the subject is protected by any patent. Marshall v. Ross, L. R. 8 Eq. 652, 653. So after a patented privilege is long since expired, such a designation

may have become a general or special word of art. Hall v. Barrows, 4 De Gex, J. & S. 155. But such exceptions only confirm the rule of decision in ordinary cases. Lord Westbury, in the court of chancery (4 De Gex, J. & S. 138, 139), seems to have had American decisions in view. His opinion appears to have been followed in the patent office of the United States. If other American opinions are conflicting, it may, perhaps, be attributable to undue defence to the supposed authority of Sykes v. Sykes. If there be such a conflict, the question is too doubtful for interlocutory adjudication.

The above observations may not be applicable to the alleged trade-mark in the words "The Mason Jar of 1872." The complainant, if so advised, may renew his application as to this mark. But a man is perhaps not at liberty to flood the market with various designations, all including more or less of a common subject, without making the differences very distinct. How this may be as to the particular subject here, I cannot at present decide.

As to the other alleged trade-marks, a preliminary injunction is refused.